UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

GROSSMAN ENTERPRISES LLC,

              *Plaintiff*,

      -against-

HUBBARD BROADCASTING, INC.,
REELZCHANNEL, LLC, AMS PICTURES, INC.,
ZUMA PRESS, INC., SHUTTERSTOCK, INC., REX
FEATURES LIMITED, GETTY IMAGES, INC., NYP
HOLDINGS, INC., *and* JOHN DOES 1-100,

              *Defendants*.

---------------------------------------------------------------------x

Index No.: 1:20-cv-03023

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiff Grossman Enterprises LLC ("GEL"), by and through its attorneys, bring this action against Defendants Hubbard Broadcasting, Inc. ("HBI"), ReelzChannel, LLC ("Reelz"), AMS Pictures, Inc. ("AMS"), Zuma Press, Inc. ("Zuma"), Shutterstock, Inc. ("Shutterstock"), Rex Features Limited ("Rex"), Getty Images, Inc. ("Getty"), NYP Holdings, Inc. ("NYP"), and John Does 1-100 (all of the foregoing parties not GEL collectively referred to hereinafter as "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

      1.    This is an action for direct copyright infringement, contributory copyright infringement, the distribution of false Copyright Management Information, the alteration or removal of Copyright Management Information, false designation of origin, false advertising, and unjust enrichment. Plaintiff GEL brings this action in response to the knowingly unauthorized uses of GEL's original, copyrighted photographs by the defendants without GEL's knowledge or consent.

2.      GEL is a limited liability company organized for the principal purpose of managing the licensing and archiving of photographic and other works created by the award-winning photographer Henry Grossman ("Grossman").  GEL is the assignee of Grossman's copyrighted works as further described below.

3.      GEL's photographic archive includes various photographs, authored by Grossman, of Robert Durst ("Durst"), Durst's former wife Kathleen McCormack (a/k/a Kathie Durst) ("McCormack"), and Susan Berman ("Berman"), a former friend of Durst.  These include a photograph of Durst and McCormack, which is registered with the U.S. Copyright Office under registration number VAu 1-198-322 ("Photo 1"), and a photograph of Durst, McCormack, and Berman, which is registered with the U.S. Copyright Office under registration number VA 1-945-060 ("Photo 2") (Photo 1 and Photo 2 are collectively referred to hereinafter as the "Photographs").

4.      The Photographs were taken by Grossman at a November 1981 book party for Berman at the iconic New York restaurant Sammy's Roumanian Steakhouse, and they were developed and completed by Grossman in early 1982.

5.      GEL is the assignee and sole owner of the copyright registrations in the Photographs.

6.      GEL sells print versions of its copyrighted photographs and has an active licensing operation for its photographs.

7.      GEL recently discovered unauthorized uses of the Photographs in connection with a television episode titled "Robert Durst," Season 3, Episode 4 of a television series titled *Murder Made Me Famous* (the "Program"), which, on information and belief, first aired on April 15, 2017. The Program focused on the allegations and investigations into the alleged murders of McCormack and Berman, allegedly by Durst.

8.      Defendants HBI and Reelz are distributors and broadcasters of the Program.

9.      Defendant AMS is the producer of the Program.

10.     According to information recently provided to GEL, AMS alleges that it obtained the Photographs by license from some combination of defendants Zuma, Shutterstock, Rex, Getty, and NYP.  Those parties did so without the authorization or knowledge of GEL.

11.     In addition, on information and belief, defendants Zuma, Shutterstock, Rex, Getty, and NYP appear to have also licensed the Photographs to other unknown third parties, without the authorization or knowledge of GEL.

12.     On information and belief, defendant NYP also knowingly and intentionally misattributed authorship of the Photographs to a different photographer named Robert Karp ("Karp"), and defendant NYP also knowingly and intentionally misattributed ownership of the Photographs to itself.  In addition, on information and belief, NYP altered the nature, quality and characteristics of the Photographs as described more fully below.

13.     Further, on information and belief, at least some of the other Defendants, including defendant Getty, were aware that such designation of Karp as the author and NYP as the owner were false.

14.     According to information recently provided to GEL, defendant AMS has purported to license the Photographs to Reelz and HBI, without the knowledge of or authorization from GEL.

15.     Defendants have reproduced, distributed, and publicly displayed the Photographs without knowledge or authorization from GEL.

16.     On information and belief, defendant NYP created unauthorized derivative works of the Photographs without the knowledge of or authorization from GEL.

17.     On information and belief, Defendants had knowledge of Grossman's status as the author of the Photographs and were on notice of prior uses of the Photographs which contained Copyright Management Information ("CMI") as defined under 17 U.S.C. § 1202(c).  Defendants, in licensing, distributing, and publicly displaying the Photographs, failed to include such CMI and instead misattributed the origin of the Photographs to various individuals or entities other than GEL or Grossman.

18.     The collective actions of Defendants have deprived GEL of substantial revenue and have caused GEL significant monetary, commercial, and reputational harm.  GEL brings this action to recover its damages and to put an end to Defendants' unlawful acts.

## PARTIES

19.     GEL is a New York limited liability company, with its principal place of business in New York, New York.

20.     HBI is a Minnesota corporation engaged in the business of media distribution and transacts significant business in New York, with its principal place of business in St. Paul, Minnesota.

21.     Reelz is a Delaware limited liability company, registered to do business in New York, engaged in the business of media distribution and transacts significant business in New York, with its principal place of business in Albuquerque, New Mexico.  Reelz is a subsidiary of HBI.

22.     AMS is a Texas corporation engaged in the business of media production and transacts significant business in New York, with its principal place of business in Dallas, Texas.

23.     Zuma is a California corporation, engaged in the business of media licensing and it transacts significant business in New York, with its principal place of business in San Clemente, California.

24.     Shutterstock is a Delaware corporation, registered to do business in New York, engaged in the business of media licensing, with its principal place of business in New York, New York.

25.     Rex is a United Kingdom private limited company engaged in the business of media licensing and transacts a significant amount of business in New York, with its principal place of business in London, England.  Rex is a subsidiary of Shutterstock.

26.     Getty is a Delaware corporation, engaged in the business of media licensing and transacts a significant amount of business in New York, with offices in New York, New York.

27.     NYP is a Delaware corporation, registered to do business in New York, engaged in the business of media distribution, with its principal place of business in New York, New York. NYP is the publisher of the media publication the *New York Post*.

28.     The identities of the John Doe Defendants are unknown to GEL at this time, but on information and belief they consist of entities who have taken unauthorized licenses from one or more of the other defendants in this action.

## JURISDICTION AND VENUE

29.     This action arises under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the laws of the state of New York.

30.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367, and 15 U.S.C. § 1121(a).

31.     GEL's claims arise from and are related to HBI's continuous and systematic contacts with the State of New York.  This Court has jurisdiction over HBI pursuant to N.Y. C.P.L.R. § 302(a) because HBI transacts business within the State of New York and has committed tortious acts against GEL within the State of New York, causing injury to GEL within the State of New York.  On information and belief, HBI regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York.  HBI further derives substantial revenue from interstate or international commerce and expected or reasonably should have expected its tortious acts to have consequences in the State of New York.

32.     GEL's claims arise from and are related to Reelz's continuous and systematic contacts with the State of New York.  This Court has jurisdiction over Reelz pursuant to N.Y. C.P.L.R. § 302(a) because Reelz transacts business within the State of New York and has committed tortious acts against GEL within the State of New York, causing injury to GEL within the State of New York.  On information and belief, Reelz regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York.  Reelz further derives substantial revenue from interstate or international commerce and expected or reasonably should have expected its tortious acts to have consequences in the State of New York.

33.     GEL's claims arise from and are related to AMS' continuous and systematic contacts with the State of New York.  This Court has jurisdiction over AMS pursuant to N.Y. C.P.L.R. § 302(a) because AMS transacts business within the State of New York and has committed tortious acts against GEL within the State of New York, causing injury to GEL within the State of New York.  On information and belief, AMS regularly does or solicits business,

engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York.  AMS further derives substantial revenue from interstate or international commerce and expected or reasonably should have expected its tortious acts to have consequences in the State of New York.

34.    GEL's claims arise from and are related to Zuma's continuous and systematic contacts with the State of New York.  This Court has jurisdiction over Zuma pursuant to N.Y. C.P.L.R. § 302(a) because Zuma transacts business within the State of New York and has committed tortious acts against GEL within the State of New York, causing injury to GEL within the State of New York.  On information and belief, Zuma regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York.  Zuma further derives substantial revenue from interstate or international commerce and expected or reasonably should have expected its tortious acts to have consequences in the State of New York.

35.    This Court has jurisdiction over Shutterstock because it is a domiciliary of, has business operations headquartered in, and transacts a significant amount of business in, New York, New York.

36.    GEL's claims arise from and are related to Rex's continuous and systematic contacts with the State of New York.  This Court has jurisdiction over Rex pursuant to N.Y. C.P.L.R. § 302(a) because Rex transacts business within the State of New York and has committed tortious acts against GEL within the State of New York, causing injury to GEL within the State of New York.  On information and belief, Rex regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of New York.  Rex further derives substantial revenue from interstate

or international commerce and expected or reasonably should have expected its tortious acts to have consequences in the State of New York.

37.    This Court has jurisdiction over Getty because it has business operations headquartered in, and transacts a significant amount of business in, New York, New York.

38.    This Court has jurisdiction over NYP because it is a domiciliary of, has business operations headquartered in, and transacts a significant amount of business in, New York, New York.

39.    Venue is proper pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

40.    Born in 1936, Grossman is one of America's most prolific and well-known professional and published photographers.  Grossman is particularly known for his portraits of prominent world figures, including but not limited to John F. Kennedy, Robert Kennedy, Henry Kissinger, Eleanor Roosevelt, Lyndon Johnson, Richard Nixon, The Beatles, Jimi Hendrix, Leonard Bernstein, Barbara Streisand, Kurt Vonnegut, Meryl Streep, and scores of other politicians and performing artists.

41.    In November 1981, Grossman authored a series of photographs taken at a book party for Berman at the iconic New York restaurant Sammy's Roumanian Steakhouse, including the Photographs of Durst, McCormack and Berman in this case, which he developed and completed in early 1982.  This was a private event to which, on information and belief, no other photographers were invited and at which none were present except for Grossman..

42.    Photo 1 features Durst and McCormack and is registered with the U.S. Copyright Office under Reg. No. VAu 1-198-322 with an effective date of January 9, 2015.  A copy of Photo 1 and its associated Certificate of Registration are attached hereto as **Exhibit A**.

43.     Photo 2 features Durst, McCormack, and Berman, and is registered with the U.S. Copyright Office under Reg. No. VA 1-945-060 with an effective date of January 9, 2015.  A copy of Photo 2 and its associated Certificate of Registration are attached hereto as **Exhibit B**.

44.     On or around March 30, 2015, Grossman and GEL entered into an assignment agreement, whereby Grossman transferred to GEL all of his right, title, and interest in the Photographs, including, but not limited to, all of his interest in the copyrights therein, all renewals and extensions of such copyrights, as well the interest in all works based on, derived from, or incorporating the Photographs (the "2015 Assignment").  The 2015 Assignment further transferred to GEL all causes of action relating to the Photographs.  A copy of the 2015 Assignment is attached hereto as **Exhibit C**.

45.     As the Photographs were authored by Grossman prior to the 2015 Assignment, on or about March 30, 2015, the Photographs, and all intellectual property rights therein, became the sole and exclusive property of GEL.

46.     In March 2020, GEL discovered that the Photographs were being used in connection with the Program, which it learned was being distributed by HBI through its subsidiary, Reelz.

47.     The Program featured derivative works of Photo 1 and Photo 2.  The infringing uses are attached hereto as **Exhibit D**.

48.     On information and belief, as it appeared in the Program, Photo 1 had been digitally altered by one or more of the Defendants by cropping the photograph to isolate the image of McCormack.  This unauthorized derivative work shall be hereinafter referred to as "Derivative Work (McCormack)."  (*Compare*, Exhibit A, at 3 (Photo 1), *with*, Exhibit D, at 3, 5-7 (Derivative Work (McCormack))).

49.     On information and belief, as it appeared in the Program, one or more of the Defendants digitally altered both of the Photographs to create a composite photograph containing elements taken from Photo 1 and Photo 2.  In particular, on information and belief, Photo 1 was cropped to isolate the image of Durst, and Photo 2 was cropped to isolate the image of McCormack, and the isolated image of Durst from Photo 1 was then flipped along its vertical axis and elongated, and thereafter was combined with the isolated image of McCormack from Photo 2, to create a composite photograph as though Durst and McCormack were posing for a photograph together. This unauthorized derivative work shall be hereinafter referred to as "Derivative Work (Composite)."  (*Compare*, Exhibit A, at 3 (Photo 1), 5 (Photo 2), *with*, Exhibit D, at 2, 4 (Derivative Work (Composite))).

50.     Derivative Work (McCormack) and Derivative Work (Composite) were created without the knowledge or authority of GEL.

51.     Based on information provided to GEL on April 10, 2020, it appears that Derivative Work (McCormack) and Derivative Work (Composite) were prepared by NYP as further described below.

52.     On information and belief, the Program first aired on April 15, 2017, is likely to have re-aired on more than one occasion since that time, and has been made available online and for streaming on demand on multiple occasions.

53.     GEL has since discovered that the Program was produced by AMS.

54.     GEL has further discovered that Derivative Work (McCormack), which is an unauthorized derivative work of Photo 1, was purportedly licensed to AMS by Zuma.

55.     Zuma purportedly received Derivative Work (McCormack) from Rex, which is a wholly owned subsidiary of Shutterstock.

56.     Derivative Work (Composite) was purportedly licensed to AMS by Getty.

57.     On information and belief, Getty received Derivative Work (Composite) from NYP.

58.     Although various other parties have infringed the copyrights in the Photographs in the past, and some of those parties obtained retroactive licenses upon payment to Grossman or GEL, the only authorized license by Grossman or GEL of either Photo 1 or Photo 2 was a license in 2002 to a media publication called *Talk Magazine*, which first published Photo 2. That licensed use included CMI identifying Grossman as its author. The publication of Photo 2 by *Talk Magazine* in 2002 is attached hereto as **Exhibit E**.

59.     Photo 1 and Photo 2 are a part of the same photographic series authored by Grossman, as indicated by the Photographs' setting, style, artistic direction, quality, and subjects.

60.     On information and belief, Defendants were on notice that the Photographs were authored by Grossman, and intentionally removed and altered the Photographs' CMI.

61.     On information and belief, Defendants further knowingly provided and distributed CMI that was false.

62.     In particular, Defendants HBI, Reelz, and AMS publicly displayed and distributed Derivative Work (McCormack), which is an unauthorized derivative work of Photo 1, with the representation that it was owned by Defendants Rex and Shutterstock, as shown on page 3 of **Exhibit F**, attached hereto.

63.     Defendants HBI, Reelz, and AMS publicly displayed and distributed Derivative Work (Composite), which is an unauthorized derivative work of Photo 1 and Photo 2, with the representation that it was owned by Getty. (*See* Exhibit F, at 2).

64.     Defendants Zuma, Shutterstock, and Rex publicly displayed, distributed, and licensed Derivative Work (McCormack) with the representation that it was owned by them or they were authorized to license it.

65.     Defendants Zuma, Shutterstock, and Rex falsely held themselves out to the public as authorized licensors of Derivative Work (McCormack).

66.     Defendant Getty publicly displayed, distributed, and licensed Derivative Work (Composite) with the representation that it was owned by NYP.

67.     Defendant NYP publicly displayed, distributed and licensed the Derivative Work (McCormack) and Derivative Work (Composite) while holding itself out to the public as the owner of the same.

68.     Defendants Getty and NYP falsely held themselves out to the public as authorized licensors of Derivative Work (Composite).

69.     Furthermore, defendants Getty and NYP further falsified the information on Derivative Work (Composite) and altered the nature, quality and characteristics of Photo 1 and Photo 2 in numerous ways, including at least by: (a) falsely attributing authorship to Karp; (b) falsely claiming NYP owned the copyright in Derivative Work (Composite); (c) changing the position of the two subjects by cropping out Berman from Photo 2 and cropping out and changing the axis of Durst from Photo 1; (d) changing the lighting of the photo; (e) further elongating and thinning Durst's face from Photo 1 in an attempt to render Derivative Work (Composite) as a purportedly legitimate stand-alone photo, attempting to further conceal the infringement;  (f) falsely representing the photo was taken on July 15, 1982; and (g) as can be seen from **Exhibit G** hereto, by including it in a collection of photographs alleged to have been taken by Karp as part of something called the New York Post Archive, when a plain view of the various photographs

credited to Karp are plainly of a different and lower quality than those taken by Grossman.  Indeed, the Photographs could not have been authored by Karp, because on information and belief Karp was not invited to Berman's private event where the Photographs were taken, and a review of Karp's photographs tends to show that Karp's photographs were taken mainly at public events to which the press was specifically invited.

70.     Each of the actions listed in Paragraphs 46-69, inclusive, were conducted without the knowledge or permission of GEL, the sole rights owner of the Photographs.

71.     The representations made by the various Defendants as described in Paragraphs 62-69 above were false, because Derivative Work (McCormack) and Derivative Work (Composite) are each a derivative work of one or both of Photo 1 and Photo 2, and GEL as the exclusive owner of the copyrights in Photo 1 and Photo 2 has the sole authority to create any derivative works of Photo 1 and 2.  Therefore, no other person or entity has the authority to create such a derivative work, and therefore is not lawfully an owner or licensor of the same.

72.     On information and belief, and as demonstrated above, Defendants were aware of Grossman's status as the author of the Photographs.

73.     To date, Defendants continue to display, distribute, license, and profit from the exploitation of, the Photographs, via the licensing and use of Derivative Work (McCormack) and Derivative Work (Composite) without authorization from, compensation to, or attribution to, GEL.

74.     GEL now brings this action to enforce its undisputable intellectual property rights in the Photographs, to enjoin Defendants from further exploitation of the Photographs, and to recover its monetary damages, costs, and attorneys' fees flowing from the unauthorized uses of the Photographs and enforcement of GEL's copyrights.

## FIRST CLAIM FOR RELIEF

**Direct Copyright Infringement, 17 U.S.C. § 101, *et seq.***
**All Defendants**

75.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 74, inclusive, as though fully set forth herein.

76.    The Photographs are original copyrightable works.  GEL has complied in all respects with 17 U.S.C. § 101, *et seq.*, and secured the exclusive rights in and ownership of the Photographs.

77.    Grossman registered the work titled *Durst Photos Vol. 1, Robert Durst, Kathie Durst & Susan Berman* and received from the U.S. Copyright Office Reg. No. VAu 1-198-322 with an effective date of January 9, 2015.  This registration includes Photo 1.

78.    Grossman registered the work titled *Robert and Kathie Durst with Susan Berman* and received from the U.S. Copyright Office Reg. No. VA 1-945-060 with an effective date of January 9, 2015.  This registration includes Photo 2.

79.    On or around March 30, 2015, Grossman executed the 2015 Assignment, transferring to GEL all of his right, title, and interest in the Photographs, including, but not limited to, all of his interest in the copyrights therein, all renewals and extensions of such copyrights, as well the interest in all works based on, derived from, or incorporating the Photographs, in addition to all causes of action relating thereto.  As a result, GEL is the sole and exclusive owner of the copyrights in the Photographs.

80.    By the actions alleged above, Defendants have infringed GEL's copyrights in the Photographs by the reproduction, public display, distribution, and creation (and reproduction, public display, and distribution) of unauthorized derivative works of the same, without GEL's permission or authorization.

81.     Defendants have done so willfully and intentionally, with full knowledge of GEL's copyrights, and in conscious disregard for GEL's exclusive rights in the Photographs

82.     As a direct and proximate result of the copyright infringement detailed herein, GEL has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

83.     As a direct and proximate result of the copyright infringement detailed herein, Defendants have gained and/or will gain substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

84.     GEL is entitled to recover its actual damages and any additional Defendants' profits not calculated in the computation of its actual damages in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

85.     In the alternative and at its election, GEL is entitled to seek maximum statutory damages for Defendants' acts of willful infringement in the amount of $150,000 per work infringed, for a total of up to at least $300,000, pursuant to 17 U.S.C. § 504(c).

86.     GEL has no adequate remedy at law to protect its rights in the Photographs and to prevent Defendants from continuing to infringe the Photographs and injure GEL.  To the extent that the infringement detailed herein persists, GEL will continue to suffer irreparable injury from Defendants' conduct as alleged.

87.     As a direct and proximate result of the copyright infringement detailed herein, GEL is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendants from infringing its copyrights, pursuant to 17 U.S.C. § 502.

88.     In addition, GEL is entitled to its costs, including its attorneys' fees, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

**Contributory Copyright Infringement, 17 U.S.C. § 101, *et seq.***
**Defendants AMS, Zuma, Shutterstock, Rex, Getty, and NYP**

89.     GEL incorporates by reference and realleges Paragraphs 1 through 88, inclusive, as though fully set forth herein.

90.     Defendants reproduced, publicly displayed, distributed, and created (and reproduced, publicly displayed, and distributed) unauthorized derivative works of the Photographs without authorization from GEL.

91.     Defendants AMS, Zuma, Shutterstock, Rex, Getty, and NYP (the "Unauthorized Licensing Defendants") knew or should have known of the infringing activity of HBI and Reelz.

92.     The Unauthorized Licensing Defendants induced, caused, enabled, facilitated, or materially contributed to the infringing activity of HBI and Reelz, namely by engaging in the unauthorized reproduction, distribution, and licensing of the Photographs, as well as the creation (and reproduction, public display, and distribution) of the unauthorized derivative works.  The Unauthorized Licensing Defendants provided the tools and support for the infringement by Defendants HBI and Reelz.

93.     Through the conduct alleged above, the Unauthorized Licensing Defendants are contributorily liable for HBI and Reelz's infringement.

94.     As a direct and proximate result of the copyright infringement detailed herein, GEL has been and continues to be damaged in an amount unknown at present and to be determined at trial.

95.     As a direct and proximate result of the copyright infringement detailed herein, Defendants have gained and/or will gain substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

96.     GEL is entitled to recover its actual damages and any additional Defendants' profits in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

97.     In the alternative and at its election, GEL is entitled to seek maximum statutory damages for Defendants' acts of willful infringement in the amount of $150,000 per work infringed, for a total of up to at least $300,000, pursuant to 17 U.S.C. § 504(c).

98.     GEL has no adequate remedy at law to protect its rights in the Photographs and to prevent Defendants from continuing to infringe the Photographs and injure GEL.  To the extent that the infringement detailed herein persists, GEL will continue to suffer irreparable injury from Defendants' conduct as alleged.

99.     As a direct and proximate result of the copyright infringement detailed herein, GEL is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendants from infringing its copyright, pursuant to 17 U.S.C. § 502.

100.     In addition, GEL is entitled to its costs, including its attorneys' fees pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF

**Distribution of False Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)**
**All Defendants**

101.     GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 100, inclusive, as though fully set forth herein.

102.     The copyrights in the Photographs are owned exclusively by GEL.

103.     Defendants knew or should have known that Grossman was the author of the Photographs.

104.    Despite having this knowledge, Defendants distributed false authorship and ownership information in connection with the Photographs and derivative works thereof.

105.    On information and belief, Defendants knowingly provided false CMI with the intent to induce, enable, facilitate, or conceal copyright infringement of the Photographs.

106.    On information and belief, Defendants knowingly distributed false CMI with the intent to induce, enable, facilitate, or conceal copyright infringement of the Photographs.

107.    On information and belief, Defendants have done so knowing, or with reasonable grounds to know, that their actions would induce, enable, facilitate, or conceal copyright infringement with respect to the Photographs.

108.    GEL has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

109.    Defendants have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

110.    GEL is entitled to recover from Defendants its actual damages and any additional Defendants' profits not taken into account in computing their actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

111.    In the alternative, and at its election, GEL is entitled to recover from Defendants, for each and every violation of 17 U.S.C. § 1202(a), the extent of which is unknown at present and which will be proven at trial, statutory damages of up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

112.    To the extent that the acts complained of herein persist, GEL is entitled to temporary and permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a), pursuant to 17 U.S.C. § 1203(b)(1).

113.    GEL is entitled to recover its costs from Defendants, pursuant to 17 U.S.C. § 1203(b)(4).

114.    GEL is further entitled to recover its attorneys' fees from Defendants, pursuant to 17 U.S.C. § 1203(b)(5).

## FOURTH CLAIM FOR RELIEF

**Removal or Alteration of Copyright Management Information
Digital Millennium Copyright Act, 17 U.S.C. § 1202(b)
All Defendants**

115.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 114, inclusive, as though fully set forth herein.

116.    The copyrights in the Photographs are owned exclusively by GEL.

117.    Defendants knew or should have known that Grossman was the author of the Photographs.

118.    Despite having this knowledge, Defendants intentionally removed or altered CMI in connection with the Photographs without the authority of GEL and knowing, or with reasonable grounds to know, that their actions would induce, enable, facilitate, or conceal copyright infringement with respect to the Photographs.

119.    On information and belief, Defendants distributed and publicly displayed the Photographs and derivative works thereof with the knowledge that the CMI was removed or altered without the authority of GEL and knowing, or with reasonable grounds to know, that their actions would induce, enable, facilitate, or conceal copyright infringement with respect to the Photographs.

120.    GEL has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

121.    Defendants have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

122.    GEL is entitled to recover from Defendants its actual damages and any additional Defendants' profits not taken into account in computing their actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

123.    In the alternative, and at its election, GEL is entitled to recover from Defendants, for each and every violation of 17 U.S.C. § 1202(b), the extent of which is unknown at present and which will be proven at trial, statutory damages of up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

124.    To the extent that the acts complained of herein persist, GEL is entitled to temporary and permanent injunctive relief to prevent or restrain further violations of 17 U.S.C. § 1202(b), pursuant to 17 U.S.C. § 1203(b)(1).

125.    GEL is entitled to recover its costs from Defendants, pursuant to 17 U.S.C. § 1203(b)(4).

126.    GEL is further entitled to recover its attorneys' fees from Defendants, pursuant to 17 U.S.C. § 1203(b)(5).

### FIFTH CLAIM FOR RELIEF

**False Designation of Origin, The Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**
**All Defendants**

127.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 126, inclusive, as though fully set forth herein.

128.    Grossman is the author of the Photographs, and all rights in the Photographs are owned exclusively by GEL.

129.    GEL offers print copies of the Photographs for sale and licenses them for use by third parties, and other works similar to the Photographs, to businesses like those of the Defendants.

130.    Defendants knew or should have known that Grossman was the author of the Photographs and that GEL was the owner of the registered copyrights in the Photographs.

131.    Despite having this knowledge, Defendants misattributed the Photographs and offered them and derivative works thereof for licensing.

132.    Defendants HBI, Reelz, and AMS falsely represented that the copyright and licensing of Photo 1, via Derivative Work (McCormack), was administered by Rex and/or Shutterstock.

133.    Defendants HBI, Reelz, and AMS falsely represented that the copyright and licensing of Photo 1 and 2, via Derivative Work (Composite), was administered by Getty.

134.    Defendant Getty falsely represented that Derivative Work (Composite) was owned by NYP.

135.    Defendant NYP falsely represented to its purported licensees and to the general public that Photo 1 and Photo 2, via Derivative Work (Composite), were authored by Karp, and that NYP was the owner of the copyright in the Photographs and derivative works thereof.

136.    Defendants have falsely represented the origin of the Photographs by attributing ownership or administration of licensing rights in the Photographs to Rex, Shutterstock, Getty and NYP in connection with the public display, publication, and licensing of the Photographs and derivative works thereof to the public.

137.    The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection, or association of the Defendants with GEL in connection with the Photographs.

138.    The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

139.    Defendants have inserted the Photographs into the stream of commerce by publicly displaying, distributing, and licensing the Photographs to the public for commercial gain.

140.    The conduct of Defendants was willful and deliberate.

141.    GEL has suffered monetary damages because GEL sells prints of and licenses the Photographs for the precise type of use employed by the Defendants.

142.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, GEL has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

143.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, Defendants have gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

144.    The conduct complained of herein constitutes an exceptional case.

145.    GEL is entitled to recover from Defendants their actual damages, the profits gained by Defendants, and GEL's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

## SIXTH CLAIM FOR RELIEF

**False Advertising, The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**
**All Defendants**

146.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 145, inclusive, as though fully set forth herein.

147.    Grossman is the author of the Photographs, and all rights in the Photographs are owned exclusively by GEL.

148.    Grossman is one of America's most prolific and well-known professional photographers.

149.    GEL sells prints of and offers licenses for the use of the Photographs, and other works similar to the Photographs, to businesses like those of the Defendants.

150.    Defendants knew or should have known that Grossman was the author of the Photographs and that GEL was the owner of the registered copyrights in the Photographs.

151.    Despite having this knowledge, Defendants Getty and NYP falsely represented that the Photo 1 and Photo 2, via Derivative Work (Composite), were authored by Karp.  (*See* Exhibit G).

152.    On information and belief, Karp is a photographer who is less famous and takes photographs of a lesser quality than Grossman.  (*See* **Exhibit H**).

153.    By falsely attributing Karp as the author of the Photographs, Defendants Getty and NYP have misrepresented the nature and quality of the Photographs in connection with the commercial advertising and promotion of the Photographs for license.

154.    In addition, Defendants Getty and NYP further falsified the information on the Photographs, via Derivative Work (Composite), and altered their nature, quality and characteristics in numerous ways, including at least by:  (a) falsely attributing authorship to Karp; (b) falsely

claiming NYP owned the copyright in them; (c) changing the position of the two subjects by cropping out Berman from Photo 1 and cropping out and changing the axis of Durst from Photo 2; (d) changing the lighting of the photo; (e) further elongating and thinning Durst's face from Photo 1 in an attempt to render Derivative Work (Composite) as a purportedly legitimate stand-alone photo, attempting to further conceal the infringement;  (f) falsely representing the photo was taken on July 15, 1982; and (g) as can be seen from Exhibit G hereto, by including it in a collection of photographs alleged to have been taken by Karp as part of something called the New York Post Archive, when a plain view of the various photographs credited to Karp are plainly of a different and lower quality than those taken by Grossman.  Indeed, the Photographs could not have been authored by Karp, because on information and belief Karp was not invited to Berman's private event where the Photographs were taken, and a review of Karp's photographs tends to show that Karp's photographs were taken mainly at public events to which the press was specifically invited.

155.    On information and belief, as it appeared in the Program, Photo 1 had been digitally altered by one or more of the Defendants by cropping the photograph to isolate the image of McCormack, to ultimately create Derivative Work (McCormack).  (*Compare*, Exhibit A, at 3 (Photo 1), *with*, Exhibit D, at 3, 5-7 (Derivative Work (McCormack))).

156.    On information and belief, as it appeared in the Program, one or more of the Defendants digitally altered both of the Photographs to create a composite photograph containing elements taken from Photo 1 and Photo 2.  In particular, on information and belief, Photo 1 was cropped to isolate the image of Durst, and Photo 2 was cropped to isolate the image of McCormack, and the isolated image of Durst from Photo 1 was then flipped along its vertical axis and elongated, and thereafter was combined with the isolated image of McCormack from Photo 2, to ultimately create Derivative Work (Composite) as though Durst and McCormack were posing for a

photograph together.  (*Compare*, Exhibit A, at 3 (Photo 1), 5 (Photo 2), *with*, Exhibit D, at 2, 4 (Derivative Work (Composite))).

157.    Derivative Work (McCormack) and Derivative Work (Composite) were created without the knowledge or authority of GEL.

158.    By digitally altering the Photographs, Defendants have misrepresented the nature, characteristics, and qualities of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public.

159.    Defendants have inserted the Photographs into the stream of commerce by publicly displaying, distributing, and licensing the Photographs to the public for commercial gain.

160.    The conduct of Defendants was willful and deliberate.

161.    GEL has suffered monetary damages because GEL licenses the Photographs for the precise type of use employed by the Defendants.

162.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, GEL has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

163.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, Defendants have gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

164.    The conduct complained of herein constitutes an exceptional case.

165.    GEL is entitled to recover from Defendants their actual damages, the profits gained by Defendants, and GEL's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

## SEVENTH CLAIM FOR RELIEF

**Unfair Competition based on Misappropriation**
**New York Common Law**
**All Defendants**

166.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 165, inclusive, as though fully set forth herein.

167.    Grossman is the author of the Photographs, and all rights in the Photographs are owned exclusively by GEL.

168.    GEL offers licenses for the Photographs, and other works similar to the Photographs, to businesses like those of Defendants.

169.    Defendants knew or should have known that Grossman was the author of the Photographs and that GEL was the owner of the registered copyrights in the Photographs.

170.    Despite having this knowledge, Defendants misattributed the Photographs and offered them for licensing.

171.    Defendants HBI, Reelz, and AMS each falsely represented that the copyright and licensing of the copyright in Photo 1 and Derivative Work (McCormack) was administered by Rex and Shutterstock.

172.    Defendant Getty falsely represented that the Photographs and Derivative Work (Composite) were owned by NYP.

173.    Defendant NYP falsely represented to its purported licensees and to the general public that it was the owner of the Photographs and derivative works thereof.

174.    Defendants have misappropriated the skill, labor, and expenditure of GEL by distributing, publicly displaying, and licensing GEL's Photographs and derivative works thereof without authorization from, or attribution to, Grossman or GEL.

175.    Defendants have inserted the Photographs into the stream of commerce by publicly displaying, distributing, and licensing the Photographs and derivative works thereof to the public.

176.    The Defendants have done so in bad faith and with a dishonest purpose, to the Defendants' commercial advantage and benefit.

177.    The conduct complained of herein constitutes an exceptional case.

178.    As a result of the conduct complained of herein, GEL has suffered, and continues to suffer, monetary damages.

179.    GEL is entitled to recover from Defendants its actual damages and a disgorgement of profits in an amount to be proven at trial for injuries sustained as a result of Defendants' unfair competition, as well as recovery of attorneys' fees and costs of this action as permitted by law and this Court.

180.    To the extent that Defendants' actions persist, GEL is additionally entitled to preliminary and permanent injunctive relief, restraining Defendants from engaging in further acts constituting unfair competition.

**EIGHTH CLAIM FOR RELIEF**

**False Advertising**
**New York General Business Law § 350**
**All Defendants**

181.    GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 180, inclusive, as though fully set forth herein.

182.    Grossman is the author of the Photographs, and all rights in the Photographs are owned exclusively by GEL.

183.    Grossman is one of America's most prolific and well-known professional photographers.

184.   GEL offers licenses for the Photographs, and other works similar to the Photographs, to businesses like Defendants.

185.   Defendants knew or should have known that Grossman was the author of the Photographs and that GEL was the owner of the registered copyrights in the Photographs.

186.   Despite having this knowledge, Defendants Getty and NYP falsely represented that the Photographs were authored by Karp.

187.   By falsely attributing Karp as the author of the Photographs, Defendants Getty and NYP have materially misrepresented the nature, character, and quality of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public, as further described above.

188.   On information and belief, as it appeared in the Program, Photo 1 had been digitally altered by one or more of the Defendants by cropping the photograph to isolate the image of McCormack, to ultimately create Derivative Work (McCormack).  (*Compare*, Exhibit A, at 3 (Photo 1), *with*, Exhibit D, at 3, 5-7 (Derivative Work (McCormack))).

189.   On information and belief, as it appeared in the Program, one or more of the Defendants digitally altered both of the Photographs to create a composite photograph containing elements taken from Photo 1 and Photo 2.  In particular, on information and belief, Photo 1 was cropped to isolate the image of Durst, and Photo 2 was cropped to isolate the image of McCormack, and the isolated image of Durst from Photo 1 was then flipped along its vertical axis and elongated, and thereafter was combined with the isolated image of McCormack from Photo 2, to ultimately create  Derivative Work (Composite) as though Durst and McCormack were posing for a photograph together.  (*Compare*, Exhibit A, at 3 (Photo 1), 5 (Photo 2), *with*, Exhibit D, at 2, 4 (Derivative Work (Composite))).

190.    By digitally altering the Photographs, Defendants have misrepresented the nature, characteristics, and qualities of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public.

191.    The actions complained of herein are likely to injure the public by causing confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with GEL in connection with the Photographs.

192.    The actions complained of herein are further likely to injure the public by causing confusion, mistake, or deception as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

193.    Defendants have inserted the Photographs into the stream of commerce by publicly displaying, distributing, and licensing the Photographs to the public for commercial gain.

194.    The conduct of Defendants was willful and deliberate.

195.    GEL has suffered monetary damages because GEL licenses the Photographs for the precise type of use employed by the Defendants.

196.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, GEL has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

197.    As a direct and proximate result of the misleading and deceptive conduct of Defendants, Defendants have gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

198.    The conduct complained of herein constitutes an exceptional case.

199.    As a result of the conduct complained of herein, GEL has suffered, and continues to suffer, monetary damages.

200.     GEL is entitled to recover from Defendants its actual damages and a disgorgement of profits in an amount to be proven at trial for injuries sustained as a result of Defendants' unfair competition, as well as recovery of attorneys' fees and costs of this action as permitted by law and this Court.

201.     To the extent that Defendants' actions persist, GEL is additionally entitled to preliminary and permanent injunctive relief, restraining Defendants from engaging in further acts constituting unfair competition.

### NINTH CLAIM FOR RELIEF

**Unjust Enrichment (in the alternative to Counts 1-2)**
**All Defendants**

202.     Plaintiff GEL incorporates by reference and realleges the allegations contained in Paragraphs 1 through 201, inclusive, as though fully set forth herein.

203.     Grossman is the author of the Photographs, and all rights in the Photographs are owned exclusively by GEL.

204.     GEL offers licenses for the Photographs, and other works similar to the Photographs, to businesses like Defendants.

205.     GEL never granted Defendants permission to use or otherwise benefit in any manner from the Photographs.

206.     Nevertheless, Defendants benefitted from the public display, distribution, reproduction, and license of the Photographs at GEL's expense.

207.     Defendants further misrepresented to third parties that they were either the owners or licensors of the Photographs and derivative works thereof.  Based on this misrepresentation, these Defendants received the benefit of licensing the Photographs for substantial fees.

208.     Defendants have been unjustly enriched by the benefits they have received at GEL's expense, and equity and good conscience demand that Defendants give GEL restitution for their receipt of those benefits.

209.     In the alternative to the relief sought in Counts One and Two of this Complaint, equity and good conscience require that Defendants disgorge any monies received for their enrichment, which was improper and at GEL's expense, and give GEL restitution for their receipt of those benefits, in the amount of the reasonable value of each license, sale, and use of the Photographs.  By reason of the foregoing, GEL has sustained monetary damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GEL prays for judgment in its favor and against Defendants as follows:

(a)     For a preliminary and permanent injunction enjoining all Defendants, their respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; their respective divisions, such divisions' respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; and those in privity with or in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise from any further acts of copyright infringement, the alteration or removal of Copyright Management Information, the distribution of false Copyright Management Information, false designation of origin, false advertising, and unjust enrichment;

(b)     For an award of monetary damages in an amount to be proven at trial, but no less than $500,000;

(c)     For costs of this lawsuit;

(d)     For their attorneys' fees;

(e)     For interest as allowed by law; and

(f)     For such other relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff GEL hereby demands

a trial by jury for all issues so triable in this case.


Dated: April 14, 2020                                        Respectfully submitted,

                                                             **LEICHTMAN LAW PLLC**

                                                    By:     */s/ David Leichtman*

                                                            David Leichtman
                                                            Tatsuya Adachi
                                                            228 East 45th Street, Suite 605
                                                            New York, New York 10017
                                                            Tel: (212) 419-5210
                                                            dleichtman@leichtmanlaw.com
                                                            tadachi@leichtmanlaw.com

                                                            **LAW OFFICES OF AMY J.
                                                            GOLDRICH**

                                                    By:     */s/ Amy J. Goldrich*

                                                            Amy J. Goldrich
                                                            228 East 45th Street, Suite 605
                                                            New York, New York 10017
                                                            Tel: (646) 247-5830
                                                            amy@amygoldrich.com


                                                            *Attorneys for Plaintiff Grossman
                                                            Enterprises LLC*